UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BETH BRADLEY, individually and on behalf of all
others similarly situated,

                                    Plaintiff,
                                                        Case # 17-CV-6224-FPG
v.
                                                        DECISION AND ORDER

SELIP & STYLIANOU, LLP, et al.,

                                    Defendants.

## INTRODUCTION

Plaintiff Beth Bradley, both individually and on behalf of a putative class action, brings

this action against Defendants Selip & Stylianou, LLP ("Selip"), Midland Funding, LLC

("Midland"), and Encore Capital Group, Inc. ("Encore"), for alleged violations of the Fair Debt

Collection Practices Act ("FDCPA").  ECF No. 17 (amended complaint).  Midland and Encore

have filed their answers to the amended complaint, *see* ECF Nos. 19, 23, and now move for

judgment on the pleadings, ECF No. 25.  For the reasons stated herein, Midland and Encore's

motion for judgment on the pleadings is GRANTED IN PART and DENIED IN PART.

## LEGAL STANDARD

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is

judged by the same standard applicable to a motion to dismiss under Rule 12(b)(6).  *See Morris v.

Schroder Capital Mgmt. Int'l*, 445 F.3d 525, 529 (2d Cir. 2006).  In ruling on such a motion, the

Court "must accept as true all of the factual allegations contained in the complaint," *Bell Atl. Corp.

v. Twombly*, 550 U.S. 544, 572 (2007), and "draw all reasonable inferences in Plaintiff['s] favor,"

*Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).  To survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A complaint is plausible when a plaintiff pleads sufficient facts that allow the Court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether a complaint meets the plausibility standard is "context-specific" and requires that the Court "draw on its judicial experience and common sense." *Id.* at 679. "On a 12(c) motion, the court considers the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (internal quotation marks omitted).

## BACKGROUND

The following facts are taken from Plaintiff's amended complaint, unless otherwise noted. Plaintiff alleges that Midland is in the business of purchasing, and then collecting on, defaulted debt. Encore is Midland's parent company, and Selip is a law firm that Midland and Encore use to spearhead their collection efforts. Midland and Encore are alleged to oversee and control Selip's collection efforts, including Selip's use of form collection letters. Plaintiff alleges that the principal business purpose of all three defendants is the collection of debts, and that more than half of their "respective revenues derive from debt collection." ECF No. 17 ¶ 10.

In early 2011, Midland instituted a debt-collection lawsuit against Plaintiff relating to a credit-card debt on which Plaintiff had allegedly defaulted. Plaintiff claims that, in fact, she had not opened the credit card and had been the victim of identity theft. Nevertheless, in August 2011, Midland obtained a default judgment against Plaintiff.

About five years later, in September 2016, Plaintiff contacted Selip to inform them of the identity theft and explain that she did not owe the credit-card debt. Plaintiff appears to have

initiated contact with Selip at this time because Selip had moved to garnish Plaintiff's wages. *See* ECF No. 17-4 at 1. Despite Plaintiff's claim of identity theft, in January 2017, Selip "initiated wage garnishment proceedings by serving [Plaintiff's] employer with an information subpoena." ECF No. 17 ¶ 18. In February, Plaintiff called Selip and reiterated that her identity had been stolen.

The gravamen of this litigation is a letter that Selip sent to Plaintiff in response to her claim of identity theft. The letter, dated March 29, 2017, is on Selip's letterhead and is signed by a legal assistant of the firm. In the subject line is a summary of Plaintiff's alleged debt:

> Re:    Original Creditor: GE MONEY/THE GAP
> Creditor: MIDLAND FUNDING LLC
> Account No. Ending In: 1160
> S&S  File No.:        757
> Charge-Off Date: April 17, 2008
> Index No.: CV 003989-11/RO
> Balance Due: $1,182.23

ECF No. 17-3 at 1. The assistant begins the letter by stating that Selip "represent[s] the above referenced creditor." *Id.* She then states, "We previously sent you a letter requesting certain documentation to assist us in reviewing your allegation of fraud. Please note that we have not received the following documents, or if we did receive it, it is incomplete . . . ." *Id.* The letter lists a number of documents, including a certification of fraud, a police report, prior letters disputing the debt, and a copy of Plaintiff's driver's license. The letter continues: "Kindly forward the documents and/or information identified above to us within the next ten (10) business days. If you fail to do so, we may continue our efforts to collect this debt from you." *Id.* The assistant ends the letter by providing Plaintiff with the telephone numbers of the firm, in case "[she] wish[es] to discuss this matter in further detail." *Id.* At the bottom of the letter is the following bolded disclaimer: "THIS COMMUNICATION IS FROM A DEBT COLLECTOR." *Id.*

On April 11, 2017, Plaintiff initiated the present action. She raises two claims. In Count I, Plaintiff alleges that Selip violated § 1692e of the FDCPA because the March 2017 letter failed to disclose that the balance due may increase as a result of interest and fees. *See* 15 U.S.C. § 1692e; *Avila v. Riexinger & Assocs., LLC*, 817 F.3d 72, 76 (2d Cir. 2016) (interpreting § 1692e to "require[] debt collectors, when they notify consumers of their account balance, to disclose that the balance may increase due to interest and fees"). Plaintiff brings her first claim both individually and as a putative class action. In Count II, Plaintiff claims that, by seeking to collect on the debt and garnish Plaintiff's wages after being informed of the identity theft, Selip falsely represented the character and legal status of the debt—namely, that Plaintiff owes the debt. *See* 15 U.S.C. § 1692e(2)(A) (prohibiting a debt collector from falsely representing "the character, amount, or legal status of any debt" in connection with the collection of the debt). Plaintiff brings Count II solely as an individual claim. For both claims, Plaintiff contends that Midland and Encore are vicariously liable for Selip's conduct.

## DISCUSSION

Midland and Encore move for judgment on the pleadings on both of Plaintiff's claims.[1] They raise three arguments, which the Court will analyze in turn.

I. **Whether the March 2017 Letter Was Sent in Connection with the Collection of Any Debt**

Defendants first argue that no FDCPA liability can attach based on Selip's March 2017 letter because Selip did not send the letter in connection with the collection of a debt. Under § 1692e, a debt collector may be held liable for using "any false, deceptive, or misleading representation or means *in connection with the collection of any debt*." 15 U.S.C. § 1692e (emphasis added). Thus, as the text makes clear, the reach of § 1692e does not extend to "*every*

_____

[1] For ease of reference, the Court will hereinafter refer to Midland and Encore collectively as "Defendants."

communication between a debt collector and a debtor." *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 384-85 (7th Cir. 2010).  But the meaning of the phrase "in connection with the collection of any debt" has also not been fully clarified, at least in the Second Circuit.

The most definitive guidance is found in *Hart v. FCI Lender Services, Inc.*, 797 F.3d 219 (2d Cir. 2015), where the Second Circuit interpreted identical language in § 1692g.  In *Hart*, the plaintiff had received a letter from his new mortgage-loan servicer after servicing obligations had been transferred from the prior servicer.  *Hart*, 797 F.3d at 221.  The letter notified the plaintiff of the transfer of servicing responsibilities, and included "relevant timing, payment, and correspondence particulars about the transfer."  *Id.*  The plaintiff brought a FDCPA claim against the new servicer, arguing that the new servicer had failed to furnish a required notice under § 1692g.  The issue before the Second Circuit was whether the transfer-of-servicing letter constituted an "initial communication with a consumer in connection with the collection of any debt," which is the action that triggers a debt collector's obligation to provide a § 1692g notice.  *Id.* at 224. Although the new servicer conceded that the letter was an initial communication, it contended that the letter was not "in connection with the collection of any debt."  *Id.*  The Second Circuit disagreed.

The court began by holding that the issue of whether a communication is "in connection with the collection of any debt" is "a question of fact to be determined by reference to an objective standard."  *Id.* at 225.  Consequently, at the motion to dismiss stage, the pertinent standard is whether a plaintiff "has plausibly alleged that a consumer receiving the communication could reasonably interpret it as being sent 'in connection with the collection of [a] debt,'" without consideration of "the sender's subjective purpose."  *Id.*; *see also Easterling v. Collecto, Inc.*, 692 F.3d 229, 233 (2d Cir. 2012) ("Whether a collection letter is 'false, deceptive, or misleading' under

the FDCPA is determined from the perspective of the objective 'least sophisticated consumer.'"). The Second Circuit reasoned that this interpretation accords with the FDCPA's consumer-protection purpose: "if a consumer receiving a letter could reasonably understand it to be a communication in connection with the collection of a debt, then the consumer is entitled to the protections Congress has mandated for such communications." *Hart*, 797 F.3d at 225.

The court declined to further "delineate the outer bounds of the phrase," however, concluding that the letter at issue could be understood by a reasonable consumer as an "*attempt* to collect a debt," which straightforwardly qualified as a communication "in connection with the collection of any debt." *Id.* at 226. In reaching this conclusion, the court highlighted a few key features of the letter:

> (1) the letter directed the recipient to mail payments to a specified address, (2) the letter referred to the FDCPA by name, (3) the letter informed the recipient that he had to dispute the debt's validity within thirty days, and (4) most importantly, the letter emphatically announce[d] itself as an attempt at debt collection: THIS IS AN ATTEMPT TO COLLECT UPON A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

*Carlin v. Davidson Fink LLP*, 852 F.3d 207, 215 (2d Cir. 2017) (internal quotation marks omitted) (summarizing *Hart*); *see Hart*, 797 F.3d at 226. The court noted that "a reasonable consumer would credit the [l]etter's warning, its instruction to take action within thirty days, and its statement that it represents an attempt to collect a debt." *Hart*, 797 F.3d at 226. For those reasons, the court determined that the plaintiff's allegations were sufficient to survive a motion to dismiss. *See id.* at 228.

Both sides dispute how the relevant standard should be applied to the allegations in this case, which are not directly analogous to those in *Hart*. Arguing for a narrower standard, Defendants assert that a communication is only in connection with the collection of a debt if it induces a consumer to pay or settle the debt. They cite cases from the Sixth and Seventh Circuits

in support.  *See, e.g.*, *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011); *Gburek*, 614 F.3d at 385.  By contrast, Plaintiff argues that any communication "related to" or "associated with" the collection of a debt should be deemed to be "in connection" with the collection of that debt.  ECF No. 28 at 9-10 (citing *Tocco v. Real Time Resolutions, Inc.*, 48 F. Supp. 3d 535, 540 (S.D.N.Y. 2014)).  The Second Circuit declined to resolve this exact disagreement in *Hart*.  *See Hart*, 797 F.3d at 225-26.

Likewise, this Court need not resolve the parties' disagreement, because the complaint survives a motion to dismiss under either standard.  Applying Plaintiff's proposed standard first, the Court concludes that Plaintiff has plausibly alleged that a consumer receiving the March 2017 letter could reasonably interpret the letter—and the allegedly misleading representation contained therein—as being "related to" or "associated with" the collection of any debt.  The letter appears on law-firm letterhead, and Selip announces that it is a debt collector and that it presently represents the creditor.  The letter identifies the balance due on Plaintiff's debt.  The letter primarily concerns Plaintiff's claim of fraud, which she raised as a result of Selip's then-ongoing efforts to collect a debt.  The Court has no trouble concluding that the letter and alleged misrepresentation regarding Plaintiff's balance are thus related to or associated with the collection of a debt.  *See Tocco*, 48 F. Supp. 3d at 540 (interpreting "in connection with the collection of any debt" to cover "communications that convey, directly or indirectly, any information relating to a debt").

As to Defendants' preferred standard, the Court similarly concludes that Plaintiff has plausibly alleged that a consumer receiving the March 2017 letter could reasonably interpret it as seeking to induce payment.  To begin, it is helpful to understand what the March 2017 letter is not—as viewed from the perspective of a reasonable consumer.  This is not a case where a debtor unilaterally initiates contact with the debt collector, and the debt collector submits a "ministerial

response." *See Grden*, 643 F.3d at 173 (finding no FDCPA liability where debtor contacted debt collector to verify account balance and debt collector provided incorrect amount). Nor is this a case where the communication merely describes the current status of the debtor's account. *Bailey v. Sec. Nat'l Servicing Corp.*, 154 F.3d 384, 388-89 (7th Cir. 1998) (concluding that letter, which listed dates of upcoming payments under forbearance agreement and warned of consequences if payments were not made, was not a communication in connection with the collection of any debt).

Rather, as the March 2017 letter indicates, Plaintiff's allegation of fraud—far from being a unilateral inquiry—was itself a response to Selip's ongoing collection efforts. Although the letter is primarily concerned with obtaining the documents necessary to review Plaintiff's fraud claim, the letter contains elements that could lead a reasonable consumer to believe that Selip is also acting in furtherance of its efforts to collect the debt. *See Hart*, 797 F.3d at 226-27 (noting that a letter from a debt collector can serve more than one purpose). The letter states that it is from a debt collector who represents the creditor, and it discloses the (allegedly misleading) balance due. Most important is the manner in which the letter requests information regarding the fraud claim. The firm asks Plaintiff to obtain several documents, including prior letters disputing the debt, a police report, and proof of residence from 2007, and return all of the requested documents within ten business days. Despite the possible difficulty of finding and submitting those documents in such a short time frame, the firm remarks that collection efforts may continue if Plaintiff fails to do so.[2] A reasonable consumer could view the letter as a subtle form of pressure to forego the hassle and just settle the debt. Put differently, the Court cannot conclude that a reasonable consumer would be able to separate Selip's request for documents from its overall efforts to collect

---

[2] Defendants interpret Selip's statement that it may continue its efforts to collect the debt to mean that "Selip had already stopped any collection efforts in light of Plaintiff's identity theft claim." ECF No. 30 at 8. While that may be one plausible interpretation, on a motion to dismiss the Court must take all reasonable inferences in the light most favorable to Plaintiff. *See Faber*, 648 F.3d at 104.

the debt, particularly given that Selip ties such request to its collection efforts. *Cf. Grden*, 643 F.3d at 173 ("[A] letter that is not itself a collection attempt, but that aims to make . . . such an attempt more likely to succeed, is one that has the requisite connection.").

Therefore, Plaintiff has plausibly alleged that a consumer receiving the March 2017 letter could reasonably interpret the misleading representation as being made "in connection with the collection of any debt." 15 U.S.C. § 1692e; *Hart*, 797 F.3d at 225. The court will not dismiss Count I based on Defendants' first argument.

## II.     Whether Midland and Encore Are Debt Collectors

Defendants next argue that they cannot be held vicariously liable for Selip's conduct because they are not debt collectors under the FDCPA. A number of courts have held that, in order to be vicariously liable for the unlawful debt collection activities of another, one must meet the definition of a debt collector. *See, e.g.*, *Polanco v. NCO Portfolio Mgmt., Inc.*, 132 F. Supp. 3d 567, 584-85 (S.D.N.Y. 2015) (collecting cases); *Plummer v. Atl. Credit & Fin., Inc.*, 66 F. Supp. 3d 484, 493 (S.D.N.Y. 2014) (same); *see also Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 108 (6th Cir. 1996). The FDCPA provides two alternative definitions for a "debt collector," only one which is relevant here: the term includes "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts."[3] 15 U.S.C. § 1692a(6).

---

[3] In their memorandum in support of the motion to dismiss, Defendants argue that, under the Supreme Court's decision in *Henson v. Santander Consumer USA, Inc.*, 137 S. Ct. 1718 (2017), they should be deemed to be creditors exempt from the FDCPA. *Henson* is inapposite, however, because it concerned the alternative definition of a "debt collector" that is not at issue here. Since *Henson*, a number of courts have held that a debt purchaser who meets the "principal purpose" definition stated above is a debt collector and may be liable under the FDCPA. *See, e.g.*, *Tepper v. Amos Fin., LLC*, 898 F.3d 364, 370-71 (3d Cir. 2018); *Norman v. Allied Interstate, LLC*, 310 F. Supp. 3d 509, 514-15 (E.D. Pa. 2018) ("[D]ebt buyers whose principal purpose of business is debt collection . . . are debt collectors under the [FDCPA]."); *see also Davidson v. Capital One Bank (USA), N.A.*, 797 F.3d 1309, 1316 n.8 (11th Cir. 2015). The Court focuses its analysis accordingly.

Defendants contend that neither Midland nor Encore can be considered a debt collector under this definition. They allege that neither entity has any employees. They claim that Midland only "invests in debts" and does not "engage in the act of collection," while Encore is merely Midland's parent company. ECF No. 30 at 10. Defendants rely on the case of *Gold v. Midland Credit Mgmt., Inc.*, 82 F. Supp. 3d 1064 (N.D. Cal. 2015), for the proposition that a debt purchaser is not a debt collector under the FDCPA if it does not directly or indirectly engage in the collection of its purchased debts. In *Gold*, a court in the Northern District of California held that Midland was not a debt collector because it "merely holds debts and engages [a debt collector] to collect on those debts." *Gold*, 82 F. Supp. 3d at 1072. At least one court has expressed skepticism with the reasoning in *Gold*, however. *See McMahon v. LVNV Funding, LLC*, 301 F. Supp. 3d 866, 884 (N.D. Ill. 2018) ("The Court fails to see why it should matter if the debt buyer hires a third party to actually collect its debt . . . . If the collection of debts is precisely what sustains the business, unaided by any other significant sources of revenue, then the 'collection of . . . debts' must be the business's 'primary purpose.'").

Regardless, even if the Court accepts *Gold* as an accurate summation of the law, Plaintiff has plausibly pleaded that Defendants do more than passively purchase and hold debt. Specifically, Plaintiff alleges that the principal business purpose of Midland and Encore is the collection of debts; that more than half of their respective revenues is derived from debt collection; that they oversee and control Selip's collection activities, including Selip's use of form collection letters; and that, in Plaintiff's case, Midland filed a lawsuit against Plaintiff to collect on the debt. These allegations suffice for purposes of the present procedural posture. *See id.* (debt purchaser interacts with consumers "by filing collection lawsuits against them"); *Kinel v. Sherman Acquisition II LP*, No. 05 Civ. 3456, 2006 WL 5157678, at *7 (S.D.N.Y. Feb. 28, 2006) (amended

complaint sufficiently alleged that debt purchasers actively engaged in collection activities, where debt purchasers controlled contents of notices sent by collection agencies and attorneys). Defendants' contrary factual claims and overall disagreement with Plaintiff's allegations do not alter this conclusion. *See* 5C Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice & Procedure: Civil* § 1368 (3d ed.) ("It is axiomatic . . . that for purposes of the court's consideration of the Rule 12(c) motion, all of the well pleaded factual allegations in the adversary's pleadings are assumed to be true and all contravening assertions in the movant's pleadings are taken to be false."). The motion to dismiss will not be granted on this ground.

## III.  Whether the *Rooker-Feldman* Doctrine Bars Count II

Defendants' final argument is that the *Rooker-Feldman* doctrine bars Plaintiff's second claim. In Count II, Plaintiff alleges that, by "proceeding with wage garnishment and attempting to collect a debt that [Plaintiff] does not owe," Selip thereby misrepresented the character and legal status of the debt, *i.e.*, that Plaintiff owed the debt. ECF No. 17 ¶ 71; *see* 15 U.S.C. § 1692e(2)(A).

Under the *Rooker–Feldman* doctrine, federal district courts lack subject matter jurisdiction "over suits that are, in substance, appeals from state-court judgments." *Hoblock v Albany Cty. Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005). A federal court should abstain from considering a claim "when four requirements are met: (1) the plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state court judgment, (3) the plaintiff invites district court review of that judgment, and (4) the state court judgment was entered before the plaintiff's federal suit commenced." *Gabriele v. Am. Home Mortg. Servicing, Inc.*, 503 F. App'x 89, 92 (2d Cir. 2012) (summary order). "The causation requirement is only satisfied if the third party's actions are produced by a state court judgment and not simply ratified, acquiesced in, or left unpunished by it." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 94 (2d Cir. 2015) (internal quotation

marks omitted). In addition, "independent claims are not barred by *Rooker-Feldman* even if they involve the identical subject matter and parties as previous state-court suits." *Romaka v. H&R Block Mortg. Corp.*, No. 17-CV-7411, 2018 WL 4783979, at *3 (E.D.N.Y. Sept. 30, 2018) (internal brackets omitted). Defendants argue that Plaintiff's theory of recovery, in substance, "asks this Court to overturn a New York State Court's issuance of a judgment." ECF No. 27 at 17. Plaintiff does not dispute that the first and fourth requirements are met, but she asserts that Count II is "an independent claim" that does not invite "rejection of the judgment entered against her" and simply challenges Defendants' "illegal debt collection practices." ECF No. 28 at 16.

The Court agrees with Defendants. To be sure, an "underlying state-court judgment can be perfectly valid, and the [defendant] can still have violated the FDCPA by making false, deceptive, or misleading communications or using unfair or unconscionable means in the course of attempting to collect on the judgment." *McCrobie v. Palisades Acquisition XVI, LLC*, 664 F. App'x 81, 83 (2d Cir. 2016) (summary order). That is not the sort of claim that Plaintiff is raising, however: she is contending that Defendants' attempts to collect on the judgment are unlawful solely because the debt on which that judgment is based is invalid and unenforceable against her. Her injuries arise from the default judgment, and her challenge to the validity of the debt would necessarily require the Court to review and reject that judgment. The Court may not do so. *See Fleming v. Gordon & Wong Law Group, P.C.*, 723 F. Supp. 2d 1219, 1223 (N.D. Cal. 2010) ("[T]here is no question that the *Rooker–Feldman* doctrine bars a district court from reviewing an FDCPA claim that challenges the validity of a debt authorized by a state court judgment."); *see also Mackey v. United States, Dep't of Justice*, No. 16-CV-3865, 2017 WL 1424437, at *6 (E.D.N.Y. Jan. 30, 2017); *Quiroz v. U.S. Bank Nat'l Ass'n*, No. 10-CV-2485, 2011 WL 2471733, at *6 (E.D.N.Y. May 16, 2011) ("[A]ny FDCPA claim based on the falsity of the debt is barred by

*Rooker–Feldman* because it would be inextricably intertwined with [the prior state-court litigation].”), *R. & R. adopted by* 2011 WL 3471497 (Aug. 5, 2011).  All four requirements are satisfied, and Count II will therefore be dismissed.

## CONCLUSION

For the reasons discussed above, Midland and Encore’s Motion for Judgment on the Pleadings (ECF No. 25) is GRANTED IN PART and DENIED IN PART, in that the Court denies the motion with respect to Count I, and grants the motion with respect to Count II.

IT IS SO ORDERED.

Dated: October 15, 2018
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court